[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
Plaintiff and the defendant intermarried at East Hartford on November 6, 1968. Both of the parties have resided continuously in the State of Connecticut for at least twelve months next preceding the date of the filing of the complaint. There are two children issue of the marriage, both of whom had obtained their majority at the time of the hearing. Based upon the testimony, of both parties there is no question that the marriage between the parties has broken down irretrievably with no hope of reconciliation.
This has been an extremely depressing matter, one of the worst heard by the court because of a marriage that has lasted twenty-five years and a marriage wherein the plaintiff tolerated approximately twenty-five years of alcoholism on the part of the defendant and severe mental and physical spousal abuse by the defendant during his times of intoxication. As a result of this spousal abuse during the twenty-five years of marriage the plaintiff has sustained cracked ribs on at least two different occasions. In 1980 she sustained a broken ankle as the result of the defendant kicking her in the ankle. Early in the marriage, she had a severed artery to her kidney caused by the trauma of a blow to her renal area by the defendant. Beside the trauma of this blow by the defendant to her general kidney area she has over the years sustained black eyes and even while pregnant, she was struck in both the face and the stomach. She has sustained a broken finger, and on one occasion, the defendant grabbed and shoved her face down into some bushes at their home. Her contact with the bushes caused numerous scratches and bruises on her face and on her arms. On another occasion he grabbed her by the hair and slammed her face into the floor. On one occasion, the defendant was criminally charged when he threatened the parties son, Lawrence, Jr. with an aluminum baseball bat while intoxicated.
The defendant is a 51 year old male who is employed by Fleet Bank as a Vice-President in the area of Cash Management. He started his employment in the banking area with the' Connecticut Bank and Trust Company which eventually merged with The Bank of New England which suffered some major financial reverses in the late 80's. As a result of the recession this bank was ultimately sold to Fleet Bank for whom the defendant now works. Since he is not one of the original people in the Fleet Bank chain of command he feels that there CT Page 8781 is no security in his job though he has been in the banking field and worked in this area for most of his marriage. As a matter of fact, he and his wife both worked for Connecticut Bank and Trust Company at the time of their marriage.
The plaintiff, on the other hand, is employed currently by the FDIC which has recently merged several offices into the Hartford area office. She is classified as a temporary employee and works on a year to year contract which can be extended a year at a time. She feels there is currently no security in this job unless it is made permanent. She has little hope of the job becoming permanent because of the influx of other FDIC employees from other areas to the Hartford office. Her annual income is approximately $35,000.00 per year as compared to his annual income of approximately, $56,000.00 per year.
There was also considerable testimony by the two sons of the parties, both of whom came into court to testify on the plaintiff's behalf, that not only was his violence directed against his wife but there were occasions when his violence was also directed against the two children when they were youngsters including one instance where he came home and as a result of an argument with a neighbor with which the boys had been involved, the defendant physically hurled the boys through the air against the wall. This was at time when they were both extremely young. The younger child was approximately 5 or less and has little memory of the incident though the older son was able to verbalize the incident very well. There were also other occasions when the sons were attacked by the father while he was drunk in which he punched them in the face or slapped their faces and directed other types of physical injury upon them.
As indicated earlier, this was one of the worse cases of spousal abuse and actual physical child abuse this court has ever heard. The defendant has argued strenuously that the court should not be swayed by these acts of violence attributed to the defendant and inflicted upon the wife and children because the court would then be in effect awarding her basically by means of a tort remedy and giving her an award for pain and suffering. The court feels that this a rather ludicrous argument. The court is well aware of the multiple factors set forth in Connecticut General Statutes46b-81(c) which are to be considered in making marital CT Page 8782 awards.
All of the factors have been given due consideration but one must be aware that each case is heard on an ad hoc basis and the weight to be given to the several factors may vary from case to case dependent upon the testimony and evidence as it comes into the case. One of the factors to be considered is "the causes for the . . . dissolution of the marriage . . ." The court will give appropriate consideration of that factor as well as to all the other factors included which the court in its individual discretion feels is warranted.
Though this has been a rather lengthy marriage, approximately twenty-five years, there has not been a large estate accumulated by the parties. The major asset is the marital home which is valued at approximately $130,000.00, which seems to be agreed upon by the parties, but which is encumbered by a first mortgage of approximately $10,900.00 and a second mortgage of $26,400.00 leaving a net equity in the home of about $93,100.00. Bank accounts held by the parties are minimal. The defendant does have a motor vehicle with approximately $4,800.00 worth of equity. The plaintiff has a motor vehicle worth about $1,000.00. The plaintiff, though she has worked a good portion of the time during the marriage, at one point having worked nights so that she could help contribute to the support of the family, plus other employment that she has had, has no pension plan and in her current job has no ability evidently to become involved in a pension plan, unless she obtains permanent status. The defendant, on the other hand, does have a pension pay-out from CBT worth $58,742.23, a 401K from Bank of New England valued at $9,400.00 and a Fleet 401K worth $7,700.00 for a total of $75,842.23. There is also a sum of $72,531.00 in the husband's marital estate which are monies he received from his father, partially in cash, as the result of having 12% interest in the father's business which was given to him by the father as an entitlement based upon the fact that in his early days he worked part-time and helped his father in the father's garage and at which time he received no compensation.
The defendant would like the latter gifts from his father treated as though it were an inheritance. However, the father made the gifts to avoid it being entitled an inheritance and bearing the burden of being subjected to inheritance taxes. Actually they are gifts that have been made during a lifetime CT Page 8783 with no condition to the defendant and are currently included as assets in his estate where they rightfully belong as cash and as notes due. The court feels quite comfortable in treating these last items as part of the estate of the husband and will give due consideration to the source of the funds in making its distribution. Unfortunately, there were also substantial liabilities in both estates revolving around Mastercard accounts and student loans on behalf of the children. The older boy has completed three years at Penn State and was unable to continue because his grades were not sufficient for him to receive a student loan for his last year of college. He is currently enlisted in the Armed Forces of the United States and at the time of the hearing had not yet been ordered to active duty but will be leaving shortly for a four year term. The younger son who is over the age of eighteen has completed one year of college and will be returning to college. It is noteworthy that the younger son received several awards and scholarship. The scholarship award for his activities in high school indicates that the boys, in spite of their father's alcoholism and in spite of the fact that the plaintiff mother drank substantially for a period of six or seven years during the 1980's, have turned out to be pretty decent citizens.
The wife's affidavit shows an indebtedness of $19,300.00 excluding her attorney's fees and the defendant shows an indebtedness of $32,625.00 including his attorney's fees which are approximately $12,000.00 at the time of filing of the affidavit. The liabilities are rather extensive and will have to be faced up to at some point. Also it should be noted that the wife receives a cost of living adjustment to her salary which does increase her net weekly income by approximately $77.00 per week. Her total net weekly income is $573.06 as opposed to the husband's net weekly income of $699.06. The wife's expenses show a $70.00 a week shortfall and since she is living with her mother, rent free, she is going to have to increase her weekly expenses by whatever her weekly rental might become so that her shortfall in the future will be increased substantially. On the other hand, the defendant shows a net surplus of $194.00 per week in his financial affidavit. He does indicate a payout of $78.08 per week the $32,000.00 plus indebtedness that he shows which would decrease his weekly surplus to about $116.00 per week. The wife also is paying out approximately $85.00 per week on indebtedness she has listed which would really increase her CT Page 8784 shortfall by approximately $85.00 per week for a total of about $160.00 per week. The husband is offering the wife a 50% Qualified Domestic Relations Order on his Fleet 401K and would like the house sold and split the proceeds. It is interesting to note that the husband has not contributed anything in the form of alimony or support for his children even though they are over eighteen since the separation. During the entire period of the separation which goes back to March, 1992 and also during a prior separation of approximately seven or eight months sometime in early 1991 and extending to sometime in August, 1991, the husband remained in the family home and did not contribute to her or the children's support, though the younger son was then a minor. The plaintiff wife is seeking a splitting of the marital estate, alimony and title to the marital home.
It is true that a large portion of the defendant's estate, roughly $57,672.00, comes through his father's ownership of a business and the ultimate disposition of the assets of the business by giving the defendant 12% of the proceeds as earlier indicated. There is also added into that $57,672.00 certain notes which will produce income to the defendant over the next four or five years but they do have a current face value as indicated in the financial affidavits and are part of the defendant's estate and should be considered for the purposes of the distribution to be made. When one takes into account the wife's estate which amounts to $44,957.50, less her liabilities as shown of $19,300.00 she is left with a net estate of $25,657.50. Taking the plaintiff's estate, and allocating each of the parties a 50/50 share in the premises at 8 Cherry Tree Drive, East Hartford, CT, the defendant's estate totals $188,611.50. That would be reduced by liabilities of $35,725.00 as shown on his affidavit giving him a net estate of $152,886.00. A fair distribution of the estate, in the court's opinion in this matter, based upon all the factors in section 46b-81(c) the court feels strongly that the plaintiff should receive 60% of the estate as opposed to 40% of the estate to the defendant. The court, in spite of the defendant's argument that this is not a tort case and she should not be awarded for her pain and suffering, this is a factor and in this case a strong factor to be considered by the court along with all the other factors, in arriving at this distribution. There is still a difference in the earning capacity of the parties and there is a large difference in their potential to accumulate more assets in the future based CT Page 8785 upon their income and the nature of their jobs, the defendant's job being more permanent than the plaintiff's job, even though he claims there is a fear of losing it because of cutbacks by his present employer. His job at least is considered a permanent job vis-a-vis the plaintiff's job which is just a temporary job. If in fact the plaintiff's job were to turn into a permanent job in the future, the court could consider modification of any alimony awards made. However it would be too late to be considered for distribution as far as the marital estate is concerned.
Totaling the estates of both parties, the net estate is valued at $178,561.50. The breakup as proposed at 60% would amount to $107,136.90 to the plaintiff and the defendant's share would amount to $71,424.60. To achieve the plaintiff's share of the estate there would have to be transfer of $81,479.40 from the defendant to the plaintiff. If we were to transfer the defendant's one-half of the equity in the house figured at $43,957.50 we would still need $37,521.90 to accomplish the transfer of assets. Since the plaintiff has a car figured in the above figure worth $1,000.00 the net transfer to be accomplished would be $36,521.90. This can be made up by way of a Qualified Domestic Relations Order taken out collectively from the defendant's CBT pension fund, The Bank of New England fund and the current 401K with Fleet Bank.
The defendant has been quoted as threatening to "burn down" or "blow up" the marital home rather than have it go to the plaintiff. The court can only hope no such act ever occurs, and if it does, the appropriate authorities will be notified.
Considering the fact that the parties have been married for a period of approximately twenty-five years, including the time of this last separation, the court seriously feels that their is also grounds for awarding periodic alimony to the plaintiff in this case, especially because of the disparity in their incomes and in light of the fact that the defendant may very well come into more money through his father's estate though the father is still alive. It should be noted that the father has been generous to this couple during the course of the marriage and has spent some substantial sums on their behalf. However, because of the disparity in their income and because the additional expenses that the wife will have to undertake to keep the house which has two mortgages on it, the CT Page 8786 court will award the plaintiff alimony in the amount of $175.00 per week for a period of three years, decreasing to $150.00 per week for three years, then further decreasing to $125.00 per week for three years and $100.00 per week for three years which will give her a total of twelve years of alimony. The periodic alimony will be modifiable as to amount but not as to term, in light of the possibility of changes that could occur in both parties employment situation. This will not quite take the plaintiff up to the point in time when she can start collecting Social Security but it should get her close enough in time so that by working she can cover the gap till she reaches the age of either 62 or 65 when she can consider retiring and collecting her Social Security Benefits.
In light of all the foregoing findings of fact, the court will order the marriage dissolved, alimony awarded as above noted and orders relative to the disposition of the estate made in accordance with the above memorandum. Because of the manner in which the estate has been disposed both parties are left with sufficient estate to pay their own counsel fees though unfortunately neither of the parties is very liquid. The court thereby orders that the parties be responsible and liable for their own counsel fees and will have to work out whatever arrangements are necessary with counsel. Each party shall be liable for their own debts as shown on their respective financial affidavits, except if any of the debts are the same or overlapping, they shall be responsible 40% to the plaintiff and 60% to the defendant.
Kline, J.